2002 WY 80

**Candi June ROBBINS, Appellant (Defendant),**

v.

**Denton Kirby ROBBINS, Appellee (Plaintiff).**

**No. 01–217.**

Supreme Court of Wyoming.

May 22, 2002.

John P. LaBuda of Palmer & LaBuda, P.C., Rock Springs, Wyoming, Representing Appellant.

John A. Thomas, Evanston, Wyoming, Representing Appellee.

Before LEHMAN, C.J., and GOLDEN, HILL, KITE, and VOIGT, JJ.

KITE, Justice.

[¶ 1] Denton Robbins (the father) filed for a divorce against Candi Robbins (the mother). At trial, the parties stipulated to the guardian ad litem (GAL) filing her report with the court and testifying concerning that report. The trial court essentially followed the GAL's recommendation and ordered physical custody to alternate every six months until the child enters school at which time the father will have primary custody with liberal visitation by the mother. The mother appeals claiming the trial court should not have allowed the GAL to testify. We affirm.

## ISSUES

[¶ 2] The mother presents the following issue:

> Did the district court err in permitting the guardian ad litem to act as attorney and a fact witness?

The father frames a somewhat distinct issue:

> Whether the district court abused it[ ]s discretion by acting in a manner which exceeded the bounds of reason in awarding joint legal and physical custody of the minor child to both parties on an alternating six month basis until either the child starts kindergarten or the mother leaves Uinta County at which time the father would have primary physical custody and the mother would have standard visitation?

## FACTS

[¶ 3] The parties married in May 2000. The father filed a complaint for divorce on August 31, 2000, seeking custody of their sixteen-month-old son. The GAL was appointed to "represent the best interests of the child." Upon the parties' agreement, temporary custody was split on a weekly basis. The parties also substantially agreed with regard to the division of their property. A trial was ultimately held on the issue of permanent custody. The GAL provided her report to both parties who stipulated at trial to the admission into evidence of the report and the supplemental report. The report described both parties as capable and loving parents. Each had made allegations against the other concerning infidelity which the GAL disregarded. The father had stable employment, and the mother worked part time. Both were admonished to refrain from using alcohol while they were with their son. The GAL recommended the joint custody continue but alternate every six months rather than weekly to enhance stability and consistency for the child. The supplemental report altered that recommendation slightly due to developments occurring between the preparation of the initial report and trial. The supplemental report stated that the mother had been living with her parents and her brother. Certain problems had developed with the brother that caused the GAL to be concerned about the parties' son living in that environment. The mother then moved out of her parents' home, but the GAL had not inspected her new residence. In addition, the mother had been involved in an altercation in a bar, and the police had frequently observed her as they performed their "bar checks." The GAL continued to recommend joint custody; however, she indicated, if the court preferred a primary custodian, she recommended the father be the primary custodian with the mother having liberal visitation. She provided three reasons for that recommendation: (1) the father demonstrated stability in his home environment and employment in contrast to the mother's instability in those areas; (2) although both parties had exhibited problems with alcohol, the mother's employment provided more opportunities for a continued "drinking lifestyle"; (3) the father had proved himself to be a more diligent facilitator with respect to visitation than had the mother.

[¶ 4] At trial, the court received testimony from the mother, the father, and numerous individuals who were acquainted with both. The GAL was offered the opportunity to ask questions of the witnesses, but she declined referencing confusion in Wyoming case law concerning the GAL's proper role at trial. The mother's counsel then informed the trial court that he and the father's counsel had discussed the GAL's appropriate role and "thought it would be best if she was just

called as a fact witness." He also indicated he was aware of Wyoming law in this area and, in fact, had a case pending before this court concerning the proper role of a GAL. Given that stipulation and the GAL's concerns, she did not participate as an attorney in the proceedings. Instead, the father's counsel called her as a witness with no objection from the mother's counsel. The GAL testified consistently with her report. In response to questions from both counsel, she provided more detail concerning her investigation and recommendations.

[¶ 5] Ultimately, the trial court ordered joint custody so long as both parents continued to live in Uinta County until the child reached school age. Specifically, it awarded custody to the mother from December 1 through May 31 and to the father from June 1 through November 30 with liberal visitation for the noncustodial parent. The court further ordered the father would have primary custody when the child reached school age or if the mother left Uinta County.

[¶ 6] On the day of trial, this court published its decision in *Pace v. Pace*, 2001 WY 43, 22 P.3d 861 (Wyo.2001), in which we confirmed our prior decision in *Clark v. Alexander*, 953 P.2d 145 (Wyo.1998), that the ethical rules prohibited attorneys from serving as GALs and also testifying as witnesses. Based upon that case, the mother filed a motion for a new trial claiming the trial court erred in allowing the GAL to testify. The trial court denied the motion, and the mother appealed.

### DISCUSSION

[¶ 7] In *Clark*, this court held that attorneys serving as GALs may not serve as fact witnesses because of their ethical obligations under the Rules of Professional Conduct for Attorneys at Law. Instead, we ruled:

> Recommendations can be made to the court through closing argument based on the evidence received. It is, therefore, unnecessary to allow the attorney/guardian ad litem to place his or her own credibility at issue. *Consequently, we join those jurisdictions which hold that an attorney/guardian ad litem*

*may not be a fact witness at a custody hearing.*

> This is not to say that the attorney/guardian ad litem may not submit a written report to the parties. A detailed report which timely informs the parties of the relevant facts and the basis of the guardian ad litem's recommendation may facilitate agreement prior to trial. If the parties so stipulate, the report may be presented to the court. However, the report should not be filed with the court or received into evidence without the express agreement of the parties. To the extent that prior Wyoming cases may conflict with this holding, they are here overruled.

*Clark*, 953 P.2d at 154 (citations omitted & emphasis added). Counsel for both parties in this case were fully aware of the *Clark* case, and yet they agreed the GAL could, and should, testify. After trial, the mother's counsel seemed to suggest that the recently issued *Pace* opinion established a new requirement which prohibited attorney GALs from testifying and also representing the best interest of the child. In fact, *Pace* created no additional requirement that had not previously been clearly articulated three years earlier in *Clark*.

■ [¶ 8] *Clark* also stands for the proposition that such an ethical violation not instigated by the prevailing party would not require reversal unless it somehow resulted in a manifest injustice.

> In *Moore* [*v. Moore*], 809 P.2d [255,] 264 [ (Wyo.1991) ], we held that an ethical violation, not brought about by the prevailing party, will be reversed only if it resulted in manifest injustice. In many district courts, it is not uncommon to allow the testimony of an attorney/guardian ad litem. Thus, in the absence of objection to the district court, we cannot say that the prevailing party in this case was responsible for the ethical violation. Therefore, we must determine whether the admission of the attorney/guardian ad litem's testimony and reports, as well as the tape recordings, resulted in manifest injustice under the

totality of the circumstances. *Moore,* 809 P.2d at 264.

Manifest injustice "contemplate[s] a situation that is unmistakable or indisputable, was not foreseeable, and affects the substantial rights of a party." *McCarthy v. State,* 945 P.2d 775, 777 (Wyo.1997).

*Id.*

■ [¶ 9] In this case, the mother cannot identify how the GAL's testimony created any injustice. It was certainly foreseeable that the trial court might consider the GAL's recommendation persuasive. That recommendation was already before the court in the form of the GAL's report, the admission to which the mother had stipulated. The parties introduced other substantial evidence, including testimony by both parents, that supported the trial court's conclusion the father was the more stable parent. At the hearing on the motion for a new trial, the trial court commented that the GAL's testimony actually convinced him in the mother's favor and dissuaded him from awarding full custody to the father. Finding no hint of injustice, we perceive no reason to reverse the trial court's ruling on permanent custody.

■ [¶ 10] An additional comment is in order. To the extent error occurred in this case, it is difficult to conceive of a more apparent example of invited error. These parties stipulated the GAL's report could be submitted to the trial court. They were fully aware of the cases addressing the propriety of attorney GALs testifying. The mother's counsel had actually argued in *Pace,* which was then pending before this court, that prior case law prevented the GAL from testifying. The GAL herself was well informed of the limitations on her role. Yet they all agreed to a procedure which allowed the GAL to testify. Now, having obtained a result that was fairly predictable—the trial court followed the GAL's recommendation—the mother and her counsel cry foul and seek another time at bat. We are decidedly unpersuaded. "[I]f a party requests or moves the court to make a ruling which is actually erroneous and the court does so, that party cannot take advantage of the error on appeal

or review." *Mayland v. Flitner,* 2001 WY 69, ¶ 44, 28 P.3d 838, ¶ 44 (Wyo.2001).

[¶ 11] Affirmed.

VOIGT, Justice, specially concurring, with which GOLDEN, Justice, joins.

[¶ 12] I concur with the result of the majority opinion because the parties stipulated to the role played by the guardian ad litem in this case, the appellant was not prejudiced by that role, and the guardian ad litem was careful not to also act as an attorney for the child. I write separately only because I believe this Court has taken a wrong turn along the way as we have continued to restrict the ability of guardians ad litem who happen to be attorneys to perform their duties.

[¶ 13] One does not need to be an attorney to be a guardian ad litem. At the same time, due to their training, experience in the judicial system, and familiarity with the issues involved in a typical custody dispute, attorneys often make excellent guardians ad litem. I do not understand why a person who has been appointed to act as a child's guardian ad litem, and who has not been appointed to act as that child's attorney, may not be called as a fact witness. The status of being an attorney does not render a person, as a general matter, incompetent to testify.

[¶ 14] As I read *Pace v. Pace,* 2001 WY 43, 22 P.3d 861 (Wyo.2001); *Clark v. Alexander,* 953 P.2d 145 (Wyo.1998); and *Moore v. Moore,* 809 P.2d 261 (Wyo.1991), it appears to me that the primary issue was how to deal with the dual role of someone appointed to be both attorney and guardian ad litem. The problem in *Pace,* for instance, was that the "GAL, who was a licensed attorney, impermissibly acted as both trial counsel and a witness." *Pace,* 2001 WY 43, ¶ 24, 22 P.3d at 869. It goes without saying that the same person should not be both witness and attorney in the same case. But we have now created a system wherein guardians ad litem who are not attorneys may testify, while guardians ad litem who happen to be attorneys may not testify, even if they do not appear as attorneys in the case. That makes no sense.

[¶ 15] Wyoming's small communities do not have an abundance of people willing to act as guardians ad litem in custody disputes. This Court should do all it can to make it easy for attorneys to fill that role. We have already stated what needs to be done to accomplish that goal: "A guardian ad litem, counsel, and the court should work together at the beginning of a case to develop and articulate clearly the scope and nature of the guardian ad litem's responsibilities." *Pace*, 2001 WY 43, ¶ 26, 22 P.3d at 870. In truth, that could be accomplished with a form order of appointment, in which it is clearly spelled out that the person appointed is acting only in the capacity of a guardian ad litem and not as an attorney.

[¶ 16] In *Clark*, 953 P.2d at 151–52, we made the following statement:

> In providing guidance to the role of an attorney appointed to represent a child while at the same time acting as guardian ad litem, we do not intend to usurp the role of the district court in appointing individuals to act solely as an attorney or as guardian ad litem. It is imperative, however, that the appointee request clarification from the appointing court if questions regarding the duties arise.

[¶ 17] That is exactly what happened in this case. The guardian ad litem was appointed to represent the best interests of the child. That is the traditional function of the guardian ad litem. She was not appointed to act as the child's attorney, and she was careful not to perform that function. I see nothing in this situation that violated the dictates of *Clark* or *Pace*.